IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| RICARDO MEDINA MEDINA<br><br>Plaintiff<br><br>vs<br><br>HCL-AMERICA INC.<br><br>Defendant | CIVIL 17-1017CCC |

**OPINION AND TRANSFER ORDER**

This action was removed to this Court from the Puerto Rico Court of Appeals (hereafter the "Court of Appeals"). It involves the alleged wrongful termination of plaintiff Ricardo Medina Medina (hereafter "Medina"), a Puerto Rico resident, by defendant HCL America, Inc. (hereafter "HCL"), incorporated in California. Before the Court is HCL's Motion for Partial Judgment on the Pleadings and Change of Venue (**d.e. 12**) filed on June 23, 2017, arguing that Medina fails to state a claim of wrongful termination and asking to transfer the remaining claims to the District Court for the Central District of California under 28 U.S.C. § 1404(a), Medina's opposition (d.e. 13) filed on June 6, 2017, based on collateral estoppel, and HCL's reply to the opposition (d.e. 15) filed on June 18, 2017. For the reasons stated below, HCL's motion is DENIED in part and GRANTED in part.

CIVIL 17-1017CCC                                        2

## I.   BACKGROUND

On January 8, 2013, Medina began working as a Senior Consultant with Axon Puerto Rico Inc. (hereafter "Axon"), a joint venture in which HCL held a 49% ownership stake when the underlying events occurred.   Almost a year into his employment, he started working exclusively on one project for its client NBC Universal.   According to Medina, HCL summoned him to their offices in California in May 2014, where he met with NBC Universal and was commended for his work product.   While in California, Levett Washington (hereafter "Washington"), a program director at HCL, purportedly offered Medina a promotion that included a salary increase, a non-discretionary bonus, and the company's compensation package, which apparently included health care coverage, retirement benefits, and vacation time.   Medina avers that the promotion offered was for a permanent position with HCL that required him to permanently relocate to California.   Because Medina understood the terms to be markedly better than the position he held at the time with Axon, he accepted Washington's purported offer.   He returned to Puerto Rico in the beginning of June 2014 to plan his move to California.

While in Puerto Rico, Medina met with Axon's general manager, Rolando Merino (hereafter "Merino") to discuss his potential new position with HCL.   According to Medina, Merino told him it would take a month for HCL and Axon to complete the transition, but did not oppose his immediate move to California because the internal arrangements would not affect the terms of his promotion.   With this alleged assurance, Medina moved permanently to

CIVIL 17-1017CCC                                    3

California later that month and started working with HCL, but at his same salary.   In the subsequent six months, Medina avers to have inquired with Washington and Merino about the status of the transition, but they supposedly informed him that the internal procedures had not yet finalized.

In December 2014, Medina was summoned to Axon's offices in Puerto Rico to again meet with Merino and with the company's project manager, Jose Ruiz.   During this meeting, Medina claims to have asked again about the status of his transition to a permanent position with HCL since he was purportedly owed the wage difference for the time he worked in California without the promised salary increase.   Medina avers that the Axon managers represented to him the transition would be completed soon and that they did not dispute his claim on the money for the promotion.   However, Merino supposedly instructed Medina at this meeting to return to Puerto Rico before January 31, 2015 so that the company could avoid claiming him as a resident of California for tax purposes.

Following this instruction, Medina goes back to California to prepare for his return to Puerto Rico.   But on January 28, 2015, HCL's program manager, Shafaquatz Ameez (hereafter "Ameez"), his superior in California, allegedly informed Medina that he could not return to Puerto Rico because his services were still needed at HCL.   Understanding he had to follow Merino's previous instruction, plaintiff understood he could not stay in California a day longer and had to fly to Puerto Rico immediately.   Medina claims that Axon suspended him for two weeks when he landed in Puerto Rico that same day

CIVIL 17-1017CCC                                          4

for failing to cancel his flight.   Medina finally indicates that Axon terminated him on February 16, 2015 without providing any reasons.

HCL sold its ownership stake in Axon in June 2015.   Shortly thereafter, on August 5, 2015, Medina sued Axon, HCL, and Pratt & Whitney, HCL's former partner in the joint venture, in the Carolina Superior Court, Court of First Instance of the Commonwealth of Puerto Rico (hereafter the "Court of First Instance").   Medina treats Axon, HCL and Pratt & Whitney as if they were one same entity, referring to them as his "employer."   *See* d.e. 1-2, p. 10, ¶ 6.   He sued them for wrongful termination under 29 LPRA § 185(a) (hereafter "Law 80"), breach of contract, unpaid wages under 29 LPRA § 250(i), unpaid vacation under 29 LPRA § 250(d) (§ 250 et seq. hereafter referred to as "Law 180"), and for defamation under 31 LPRA § 5141 (hereafter "Article 1802").[1]

HCL answered the complaint on September 15, 2015 and moved to discontinue the proceedings based on *forum non conveniens* on October 22, 2015.   It then filed a motion to dismiss under Puerto Rico Rule of Civil Procedure 10.5 (hereafter "Rule 10.5") on November 13, 2015 for lack of jurisdiction and also requested a judgment on the pleadings.   The Court of First Instance granted HCL's motion on March 30, 2016 and ordered a partial judgment on claims against HCL.   Medina appealed to the Puerto Rico Court

---

[1]The Court notes that the complaint only lists four causes of action and does not contain one for breach of contract.   Nonetheless, the TPI and the Court of Appeals proceeded as if one was alleged, while HCL also refers to a breach of employment contract claim in its motion.   *See* d.e. 12, pp. 1-2.

of Appeals on April 29, 2016 and on June 23, 2016, it determined the Court of First Instance had jurisdiction over the matter.

Pratt & Whitney in turn moved and was granted dismissal of the complaint by the Court of First Instance on December 21, 2015.   Medina filed a Notice of Voluntary Dismissal without Prejudice against Pratt & Whitney on January 15, 2016.

On July 13, 2016, Medina also filed a Notice of Voluntary Dismissal with Prejudice against Axon as a result of the parties reaching a confidential settlement.   The dismissal stated explicitly that it did not include HCL and requested that proceedings continue against it.   HCL then filed a Motion to Reconsider with the Court of Appeals on July 14, 2016, which was denied on October 19, 2016.   With HCL as remaining defendant, it removed the case to this Court based on diversity jurisdiction on January 7, 2017.   HCL has now moved for judgment on the pleadings and transfer venue.

## II.     RELEVANT LEGAL STANDARDS

### A. Rule 12(c): Judgment on the Pleadings

Under Fed. R. Civ. P. 12(c), a party may move for judgment on the pleadings after they are closed.   "A motion for judgment on the pleadings is treated much like a Rule 12(b)(6) motion to dismiss." *Perez-Acevedo v. Rivero-Cubano,*  520 F.3d 26, 29  (1st Cir. 2008) (referring to *Curran v. Cousins,* 509 F.3d 36, 43-44 (1st Cir. 2007)).   When reviewing a motion for judgment on the pleadings, the Court must "view the facts contained in the

pleadings in the light most flattering to the nonmovants (here, the plaintiffs) and draw all reasonable inferences therefrom in their favor." *Aponte-Torres v. Univ. of Puerto Rico,* 445 F.3d 50, 54 (1st Cir. 2006) (referring to *Rivera-Gomez v. de Castro,* 843 F.2d 631, 635 (1st Cir. 1988)). "Like Rule 12(b)(6), Rule 12(c) does not allow for any resolution of contested facts; rather, a court may enter judgment on the pleadings only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." *Id.*

### B. 28 U.S.C. § 1404(a): Change of Venue

Section 1404(a) allows "a district court to transfer any civil action to any other district or division where it might have been brought" "for the convenience of the parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). "A determination of venue under § 1404(a) lies in the sound discretion of the district court." *Rivera-Carmona v. American Airlines,* 639 F.Supp. 2d 194, 197 (D.P.R. 2009). "In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion … must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas,* 134 S. Ct. 568, 581, 187 L. Ed. 2d 487 (2013).

Among the private interest factors to consider, the Supreme Court has listed "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining

CIVIL 17-1017CCC                                          7

attendance of willing, witnesses...; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508,  67 S. Ct. 839,  91 L.Ed. 1055 (1947)  (superseded by statute on other grounds). Public interest factors considered include the administrative difficulties that follow for courts when litigation is piled up in congested centers instead of being handled at its origin; that jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation; and that there is a local interest in having localized controversies decided at home. *See Id.* at 508-09, 67 S. Ct. 839. These factors are not exhaustive and merely suggest the range of relevant considerations. *Royal Bed & Spring Co. v. Famossul Industria e Comercio de Moveis Ltda.*, 906 F.2d 45, 52 (1st Cir. 1990).

Even so, when considering a motion to transfer venue, "[t]he convenience of witnesses is 'probably the most important factor.'" *Rojas-Buscaglia v. Taburno*,  No. 09-2196 JAG,  2010 WL 3304299,  at *3 (D.P.R. Aug. 18,  2010) (citing *Sousa v. TD Banknorth Ins. Agency*, 429 F.Supp. 2d 454,  457 (D.N.H. 2006)); *see also Bowen v. Elanes New Hampshire Holding, LLC,*  166 F.Supp. 3d 104, 108-109  (D. Mass. 2015); *Atari v. UPS, Inc.,* 211 F.Supp. 2d 360, 362 (D. Mass. 2002).

"The burden of proof rests with the party seeking transfer as there is a strong presumption in favor of the plaintiff's choice of forum." *Rivera-Carmona*, 639 F.Supp. 2d at 197.

CIVIL 17-1017CCC                                          8

## III. DISCUSSION

### A. Collateral Estoppel is Inapplicable

At the outset we address the argument that HCL's motion should be denied based on collateral estoppel under 31 LPRA § 3343.   HCL correctly notes that a plain reading of section 3343 shows the doctrine applies "in another suit."    Several decisions applying collateral estoppel under section 3343 do so in the context of two separate suits.   *See, e.g., Sanchez-Nunez v. P.R. Elec. Power Auth.*, 509 F. Supp. 2d 137, 2007 U.S. Dist. LEXIS 64394 (D.P.R. 2007) (discussing the mutuality requirement of section 3343 when applying collateral estoppel between the first and second suit); *Schneider v. Colegio de Abogados de P.R.*, 670 F. Supp. 1098, 1987 U.S. Dist. LEXIS 8023 (D.P.R. 1987) (explaining that collateral estoppel under section 3343 precludes any second litigation between the same parties over issues that were debated and resolved by a valid fixed judgment).   The instant case is not a separate suit from the one Medina started in the Court of First Instance.   It has removed that same case to this Court, not started a new one.

Medina's reservation of rights to oppose HCL's motion on the merits is misplaced and improper.   *See* d.e. 13, fn. 1.   The Federal Rules of Civil Procedure do not provide for this, nor does this Court recognize such a right. By failing to address HCL's arguments for judgment on the pleadings and change of venue, Medina has waived any opposition he could have raised.

CIVIL 17-1017CCC                                        9

## B. Wrongful Termination under Law 80

To state a claim of wrongful termination under Law 80, Medina's "initial burden is to allege unjustified dismissal and [allege] actual dismissal." *Morales v. Nationwide Ins. Co.*, 237 F. Supp. 2d 147, 153 (D.P.R. 2002). Law 80 defines a "dismissal without just cause [as] '[one] made by mere whim or fancy of the employer or without cause relative to the normal operation of the establishment." *Perez Montero v. CPC Logistics, Inc.*, 536 F. Supp. 2d 135, 146 (D.P.R. 2008), as amended (Mar. 3, 2008). Essentially, "Law 80 defines a dismissal without just cause as a dismissal based on a reason not allowed by the statute." *Alvarez-Fonseca v. Pepsi Cola of Puerto Rico Bottling Co.*, 152 F.3d 17, 28 (1st Cir. 1998).

Medina alleges that he was first "suspended for 2 weeks for not canceling a flight … that was ordered and scheduled by and through the company itself." d.e. 1-2, p. 13, ¶ 28. He then asserts that he was terminated "without providing him with the reasons for the termination." *Id.* at ¶ 32. These allegations are sufficient to plead he was terminated by his employer's "mere whim," i.e., that his dismissal was unjustified. *See Zayas-Ortiz v. Becton Dickinson Caribe, Ltd.,* 878 F. Supp. 2d 351, 356 (D.P.R. 2012) (finding plaintiffs satisfied pleading requirements for a Law 80 claim where they allege employee was fired without explanation).

These same allegations are enough for Medina to plead he was actually terminated. At issue, however, is whether Medina has plead he was

CIVIL 17-1017CCC                                         10

dismissed **by HCL**. To make this determination, we consider whether Medina sufficiently asserts in his complaint that HCL was his employer at the time of dismissal. HCL contends that Medina must assert factual allegations to establish a 'joint employment relationship' between HCL and Axon, given that Medina alleges an employment claim against more than one entity. *See* d.e. 13, p. 4.

Whether Axon or HCL was ultimately Medina's employer at the time of his potentially wrongful dismissal is a contested fact which makes entering judgment on the pleadings for Medina's Law 80 claim inappropriate at this stage of the litigation. *See Aponte-Torres*, 445 F.3d at 54.

## C. Change of Venue

Having reviewed HCL's arguments in favor of transfer and considering Medina did not oppose the request to change venue, we rule that the case be transferred to the District Court for the Central District of California.

### 1. Venue and Jurisdiction

"Since 'transfer [according to § 1404(a)] must be to a jurisdiction where the action could have been brought in the first place' the court will, as a threshold matter, inquire as to whether jurisdiction and venue are proper in the transferee court." *Marel Corp. v. Encad Inc.*, 178 F.Supp. 2d 56 (D.P.R. 2001) (quoting *Reyes v. Supervisor of Drug Enforcement Admin.*, 834 F.2d 1093, 1095 (1st Cir. 1987)).

Venue in the Central District of California is proper under the general venue statute 28 U.S.C. § 1391(b)(2) given that "a substantial part of the events or omissions giving rise to the claim occurred" there.   Medina received a purported promotion in California and the alleged defamatory statements were also made there.   Thus, the operative facts that gave rise to Medina's unpaid wages, unpaid vacation, breach of contract, and defamation all occurred in California.

The instant action involves diverse parties and alleges damages of $266,000.00, giving the Central District of California subject matter jurisdiction over the case.   As a company incorporated under the laws of California with its headquarters also there, the Central District of California has personal jurisdiction over it.

Having met these threshold issues, the Court addresses the convenience of the witnesses and finds that HCL has met its burden.

### 2.  Convenience of the Witnesses

HCL is right that the convenience of the witnesses weigh in favor of transferring venue to the Central District of California. *See* d.e. 12, p. 9. When considering how much weight to give this "most important factor", "[o]f paramount importance is, 'the nature or materiality of the testimony of prospective witnesses; it is not sufficient merely to state the number of witnesses who will be inconvenienced or to list their names and addresses, but rather the movant must show the nature, substance, or materiality of the

CIVIL 17-1017CCC                                    12

testimony to be offered by the prospective witnesses or must state generally what is expected to be proved by those witnesses." *Rojas-Buscaglia*, 2010 WL at *3 (citing *Myers v. Pan Am. World Airways, Inc.*, 388 F.Supp. 1024, 1025 (D.P.R. 1974)).

HCL has shown that both parties' key witnesses, Washington and Ameez, HCL employees, reside in California. Mr. Washington is the key witness who allegedly made the offer of employment to Medina, while Mr. Ameez is the key witness who allegedly made the defamatory statements about Medina to HCL's clients. HCL also lists Mr. Remal Pateder who will testify that HCL never recruited Medina, a crucial testimony for the wage and employment claims Medina asserted, and refers to NBC Universal's employees in California who were told the supposed defamatory statements.

Not only would these witnesses be inconvenienced if forced to testify in Puerto Rico, but trying this case in California would be less expensive for both parties than if they needed to come to this forum. Medina's travel to California in turn entails less of a logistical challenge than planning these witnesses' travel to Puerto Rico, which would expedite the resolution of the matter than if it were tried here. And after working in California for six months, Medina cannot allege he would be too inconvenienced if we transferred his case there.

Although courts usually defer to a plaintiff's choice of forum, we find HCL has rebutted that presumption. The operative facts, the convenience of the

CIVIL 17-1017CCC                              13

witnesses, and the interest in the expeditious and inexpensive resolution of this matter make transferring venue "in the interest of justice."  28 U.S.C. § 1404(a).

## IV. CONCLUSION

For the reasons set forth above, defendant HCL's motion on the pleadings is DENIED and its motion to transfer to the Central District of California is GRANTED (**d.e. 12**).  The Clerk SHALL transfer venue to that district and close the case here.

SO ORDERED.

At San Juan, Puerto Rico, on March 28, 2018.

                              S/CARMEN CONSUELO CEREZO
                              United States District Judge